THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
NICHOLAS ALBERTON, GRIFFIN EPSTEIN,
GABRIELLE LANG, JENNY ESQUIVEL,
AND JEFFREY MILLER,                                    COMPLAINT

                                                       JURY TRIAL DEMANDED

              Plaintiffs,

        vs.

THE CITY OF NEW YORK, a municipal
entity, NEW YORK CITY POLICE DEPARTMENT,
MICHAEL BLOOMBERG, Mayor of the City of New York;
JOSEPH ESPOSITO, Chief of the New York City Police
Department, RAYMOND KELLY, New York City Police Commissioner,
JOHN J. COLGAN, Deputy Chief and Commanding Officer
at the Pier # 57 Detention Facility, THOMAS GRAHAM,
Commanding Officer of the New York City Police Department
Disorders Control Unit, BRUCE SMOLKA, Assistant Chief in the New York
City Police Department and in Patrol Borough Manhattan South,
and TERRENCE MONAHAN, Assistant Chief in the
New York City Police Department, and the Chief of the Bronx
Borough Command; NEW YORK CITY POLICE SUPERVISORS AND
COMMANDERS "RICHARD ROES",
NEW YORK CITY POLICE OFFICERS "JOHN DOES"
and "SALLY ROES"; NEW YORK CITY POLICE OFFICER,
"JOHN" CONNOLLY, NEW YORK CITY POLICE
OFFICER "SALLY" ROSE-HINKSMAN, NEW YORK CITY POLICE OFFICER
TYREE FISHER; NEW YORK CITY POLICE DETECTIVE VICTOR LEBRON,
individually and in their official capacities, jointly and severally.

              Defendants.
-----------------------------------------------------------------X

        Plaintiffs NICHOLAS ALBERTON, GRIFFIN EPSTEIN, GABRIELLE LANG, Jenny
ESQUIVEL, and JEFFREY MILLER, by and through their attorneys Alterman & Boop, LLP
complaining of Defendants the CITY OF NEW YORK; CITY OF NEW YORK POLICE
DEPARTMENT; MICHAEL BLOOMBERG, Mayor of the City of New York; JOSEPH
ESPOSITO, Chief of the New York City Police Department; RAYMOND KELLY, New York
City Police Commissioner, JOHN J. COLGAN, Deputy Chief and Commanding Officer at
the Pier # 57 Detention Facility, THOMAS GRAHAM, Commanding Officer of the New
York City Police Department Disorders Control Unit, BRUCE SMOLKA, Assistant Chief in
the New York City Police Department and in Patrol Borough Manhattan South,
TERRENCE MONAHAN, individually Assistant Chief in the New York City Police
Department and the Chief of the Bronx Borough Command, NEW YORK CITY

SUPERVISORS AND COMMANDING OFFICERS "RICHARD ROES", NEW YORK CITY POLICE OFFICERS "JOHN DOES" and "SALLY ROES", NEW YORK CITY POLICE OFFICER, "JOHN" CONNOLLY, NEW YORK CITY POLICE OFFICER TYREE FISHER, NEW YORK CITY POLICE OFFICER "SALLY" ROSE-HINKSMAN, NEW YORK CITY POLICE OFFICER "SALLY" ROMAN, and NEW YORK CITY POLICE DETECTIVE VICTOR LEBRON,, individually and in their official capacities hereby allege as follows:

## INTRODUCTION

1. This is an action against the Defendant parties, individually and collectively, for the violations of the Plaintiffs' guaranteed constitutional and civil rights under the United States Constitution and federal laws and their constitutional and other rights guaranteed by the New York State Constitution and New York State laws.

2. This case arises out of the arrests of the Plaintiffs before and during the Republican National Convention ("RNC") as follows:

   Plaintiffs NICHOLAS ALBERTSON, GRIFFIN EPSTEIN AND GABRIELLE LANG on August 31, 2004 in the vicinity 34th Street and 6th Avenue in the State of New York, County of New York in the time frame of 8:30 p.m. to 10:00 p.m.; and

   Plaintiffs JENNY ESQUIVEL and JEFFREY MILLER on August 31, 2004 in the vicinity of 370 Park Avenue South in the State of York, County of New York in the time frame of 8:00 p.m. to 9:30 p.m.

3. The Defendants in this action, acting individually and in their official capacities, jointly and severally, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and/or customs to punish peaceful protest during the RNC by, inter alia, engaging in mass arrests during which Plaintiffs were arrested, which were unlawful and without probable cause; instituting a system of private detention to keep lawful protestors off the streets during the RNC; and subjecting those arrested to intolerable and cruel and inhumane conditions, including but not limited to denying them access to family members, medical care and legal counsel for inordinate and unreasonable amounts of time.

4. This case further arises from the subsequent proffering of charges associated with said arrests and, related thereto, the Plaintiffs' detention and the terms and conditions of said detention.

5. Furthermore, this case centers upon the utilization of unnecessary, unreasonable and excessive force, including but not limited to excessive handcuffing, and, additionally, the denial of medical treatment and the otherwise punitive and retaliatory conduct and actions by Defendants against Plaintiffs because of their legitimate, reasonable, and protected speech activities.

6. The Plaintiffs seek monetary damages, both compensatory and punitive for their wrongful and unlawful false arrest; for their wrongful and unlawful detention and incarceration; for the wrongful proffer of charges; for the utilization of

unnecessary and unreasonable and excessive force; for the unreasonable and unlawful manner and conditions of their detention; for the denial of medical care associated with their detention and imprisonment; for the malicious abuse of criminal process; denial of access to legal counsel; for violations of their rights to engage in free speech; for the retaliatory and punitive conduct against the Plaintiffs because of their reasonable, legitimate and protected speech activities; and the intentional exposure to toxins and other hazardous materials.

## JURISDICTION

7. Jurisdiction of this Court is invoked pursuant to and under 28 U.S.C. § § 1331, 1332, and 1343(a) (3) and (4) in connection with Plaintiffs' claims arising under the Civil Rights Act of 1871, 42 U.S.C. § 1983, and the First, Fourth, Sixth and Fourteenth Amendments to the United States Constitution.

8. Jurisdiction is also invoked pursuant to and under 28 U.S.C. § 1367, entitled Supplemental Pendent Party Jurisdiction insofar as the State law claims have a common nucleus of operative fact with the federally based claims and they arise out of the same transactions and occurrences giving rise to the Plaintiffs' federally based claims and causes of action.

## VENUE

9. Venue is proper within the United States District Court for the Southern District of New York pursuant to 28 U.S.C. § 1391 as the complained about action took place within the Southern District of New York.

## JURY TRIAL DEMANDED

10. Plaintiffs hereby request a trial by jury on each and every claim

## CONDITION PRECEDENT

11. Plaintiffs have served Notices of Claims upon the Defendant City of New York.

12. Currently pending in the Supreme Court, County of New York is a Petition seeking acceptance of a Late Notice of Claim on behalf of Plaintiff Jeffrey Miller. See Miller v. City of New York, Index. No.: 0110803/05

## PARTIES

13. The Plaintiffs are as follows:

   A) NICHOLAS ALBERTSON is an American citizen and a resident of the State of Massachusetts;

   B) GRIFFIN EPSTEIN is an American citizen and a resident of the State of New York;

  C) GABRIELLE LANG is an American citizen and a resident of the State of New York;

  D) JENNY ESQUIVEL is an American citizen and a resident of the State of Missouri; and

  E) JEFFREY MILLER is an American citizen and a resident of the State or Missouri.

14. The Defendant CITY OF NEW YORK is a municipal entity existing pursuant to and under the laws and Constitution of the State of New York.

15. Defendant MICHAEL BLOOMBERG is and was at all relevant time the Mayor of the City of New York and the chief policy making official for the City and its departments, including the New York City Police Department ("NYPD") and, upon information and belief, is responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein including the oversight and implementation of the RNC policing operations including the arrest and detention operations that were carried out and to which the Plaintiffs were subjected. He is sued both in his individual and official capacity.

16. Defendants JOSEPH ESPOSITO is the Chief of the New York City Police Department. RAYMOND KELLY is the New York City Police Commissioner. THOMAS GRAHAM, BRUCE SMOLKA, JOHN COLGAN, and TERRENCE MONAHAN are all high-ranking New York City Police Department Command Officers who, along with Defendants ESPOSITO, KELLY, and RICHARD ROES, New York City Police Supervisors and Commanders are responsible for the creation, implementation, promulgation and enforcement of the policies, practices and/or customs complained of herein including the oversight and implementation of the Republican National Convention ("RNC") policing operations including the arrest and detention operations that were carried out and to which the Plaintiffs were subjected. Notwithstanding the wrongful and illegal nature of their acts and conduct as hereinafter described, said acts and conduct were undertaken in and during the course of their duties and functions as employees and agents of the City of New York and incidental to the otherwise lawful performance of the same. All of the Defendants are sued in their individual and official capacities.

17. Unnamed New York City Police Officers "John Does" and "Sally Roes, New York City Police Officer "John" Connolly, New York City Police Officers "Sally" Rose-Hinksman, Tyree Fisher, "Sally" Roman, and Detective Victor Lebron were involved in the arrests of plaintiffs and all the actions and conduct associated therewith, including, inter alia, the use of force, the proffering of charges, the approval of charges, the prosecution of the plaintiffs, the abuse of criminal process, the cruel and inhumane conditions to which those arrested were subjected the excessive and unnecessary detention, denial of access to medical counsel and the implementation of the challenged polices and practices alleged

herein. Notwithstanding the wrongful and illegal nature of their acts and conduct as hereinafter described, said acts and conduct were undertaken in and during the course of their duties and functions as employees and agents of the City of New York and incidental to the otherwise lawful performance of the same. They are sued in their individual and official capacities.

18. At all relevant times Defendants were agents and/or employees of the Defendant New York City and at all relevant times all Defendants acted under the color of state law.

19. At all relevant times Defendants violated clearly established constitutional standards under the First, Fourth and Fourteenth Amendments to the United States Constitution and clearly established statutory and constitutional rights under New York State laws and the New York State Constitution which a reasonable police officer, commanding officer and/or agent of the NYPD or public official under his or her respective circumstances would have known.

## FACTUAL ALLEGATIONS

### A. GENERAL FACTUAL ALLEGATIONS

20. The National Republican Party held its nominating convention, the RNC, in New York City from August 30, 2004, to September 2, 2004. Upon information and belief, in advance of the RNC, Defendants were aware that numerous demonstrations would occur and were well aware of the plans made by various groups and individuals to demonstrate during the relevant period.

21. Upon information and belief, months before the RNC, the City of New York, through its various agencies in the criminal justice system, began to prepare for any arrests and prosecutions which might follow demonstrations during the RNC.

22. The Defendants adopted, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and customs designed to punish peaceful protesters at the RNC by engaging in, inter alia, mass arrests which were unlawful and without probable cause, instituting a system of preventive detention to keep lawful protesters off the streets during the RNC and subjecting those arrested to intolerable and cruel and inhumane conditions.

23. The Defendants adopted, implemented, enforced, encouraged, sanctioned and/or ratified policies, practices and customs designed and intended to slow down the processing of those arrested during the RNC so as to maximize the amount of time that people arrested would be held in detention. The defendants also developed arrest procedures and tactics which were designed and intended to punish and retaliate against individuals who were engaging in political protest or simply observing people engaging in political protest. In addition to being punitive, the procedures and policies adopted by the defendants during the RNC were designed and intended to discourage political protest, freedom of expression and freedom of speech.

24. As part of the policies, practices and customs designed to slow down the processing of those arrests during the RNC and make such detention difficult, intimidating and unsafe, defendants deliberately used a facility completely unfit for human occupancy as a detention facility, at Pier 57, exclusively for RNC protestors and those arrested in the vicinity of RNC protests.

25. The policies, practices and customs adopted by the Defendant City of New York and implemented by its Defendants agents and employees during RNC, propelled police officers to act outside the bounds of constitutionally proscribed conduct thereby subjecting Plaintiffs to, inter alia, false arrest; false imprisonment; excessive force; unlawful fingerprinting and photographing; denial of adequate medical treatment and food; denial of access to counsel; excessive detention; exposure to toxic irritants; and detention in unhealthy and dangerous conditions.

26. The arrests and subsequent detentions and conditions of subsequent detentions of Plaintiffs were part of a policy, practice and custom adopted and implemented by defendants to arrest persons lawfully engaged in the exercise of their protected free speech activity.

27. The policies, practices, and customs of Defendant City of New York created a situation where people, who were otherwise doing nothing impermissible, were subjected to arrest and denied their right to freely and lawfully engage in peaceful assembly and demonstration and to otherwise be on the sidewalk doing nothing other than observing actions taken by Police Officers toward other individuals and/or just being present.

28. There was no probable cause or other reasonable basis for the Plaintiffs' arrest, detention, and imprisonment at the time of their arraignment.

29. The Plaintiffs were falsely arrested, detained and imprisoned in retaliation for their legitimate exercise of their protected free speech activities.

30. The unconstitutional arrests of Plaintiffs, who were not in violation of any laws, and their subsequent detentions were done with the collateral objective of punishing and retaliating against them for the exercise of their protected free speech activities.

31. The Plaintiffs were subjected to excessive, unreasonable, and unnecessary force by, inter alia, the nature and extent of their handcuffing.

32. The Plaintiffs were subjected to unreasonable, unnecessary and excessive detention when, having been arrested, they were not promptly released, but rather detained greatly in excess of twenty-four (24) hours and put through the system, the latter of which was not only unnecessary, unreasonable and excessive, but also punitive and designed to retaliate against Plaintiffs for the exercise of their protected free speech activity.

33. The Plaintiffs were subjected to unreasonable, unnecessary, and excessive terms and conditions of seizure, detention and imprisonment by, <u>inter alia</u>, unlawful and unnecessary fingerprinting; over-crowded holding cells; unhealthy conditions of holding cells; denial of medical care; denial of access to counsel; inadequate food; and intentional exposure to toxic substances.

34. The actions and conduct taken against the Plaintiffs were the result of and were propelled by the policies, practices and customs of the City of New York.

35. Upon information and belief, there were New York City Police Officers, both line Officers and command Officers, who played integral roles in the actions and conduct taken against the Plaintiffs during the course of the entire transaction described herein and component parts thereof. These roles included Command Officers and policy-making Officers, all or some of whom authorized and sanctioned the conduct practiced and taken against the Plaintiffs, propelling the actions and conduct, in the component parts thereof and their totality, taken against the Plaintiffs.

36. The actions and conduct taken against the Plaintiffs were taken by agents and employees of Defendant City of New York who were acting under color of law and who were otherwise "state actors". While their conduct and actions were wrongful, unconstitutional, and otherwise unlawful, said actions were taken by the City's agents and employees in the course of their respective duties and functions and incidental to the otherwise lawful performance of the same.

37. The Plaintiffs suffered physical pain, anxiety, embarrassment, loss of liberty, emotional distress, psychological trauma, mental anguish and financial losses.

38. The Plaintiffs continue to suffer residual injuries and damages as a consequence of the actions, conduct, policies, practices, and customs as described and the violation of their rights associated therewith.

39. The actions, conduct, policies, practices and customs of Defendants were the proximate cause of the injuries and damages suffered by Plaintiffs.

40. The Plaintiffs have no other adequate remedy at law but for the institution of this litigation.

<u>B. FACTS UNIQUE TO EACH PLAINTIFF</u>

**1. Plaintiffs Nicholas Albertson, Griffin Epstein and Gabrielle Lang**

41. On or about August 31, 2004 at approximately 8:00 p.m. Albertson and his co-Plaintiffs Griffin Epstein and Gabrielle Lang were walking peaceably in the vicinity of mid-town Manhattan.

42. At that time, Albertson, Epstein and Lang were exercising their rights to free speech and association by peaceably participating in demonstrations related to the Republican National Convention.

43. While standing on 34th Street numerous unidentified police officers approached and informed Albertson, Epstein and Lang that they should stand on one half of the sidewalk to let pedestrians pass.

44. Albertson, Epstein and Lang stood alongside the GAP stores on the corner of 34th and 6th Avenue with approximately twenty five (25) persons who, upon information and belief were not part of any organized protest.

45. Subsequently more unidentified police officers arrived and placed a type of barricade in front of Albertson, Epstein and Lang.

46. Albertson, Epstein and Lang were unlawfully arrested and their possession were improperly searched by unidentified police officers.

47. As Albertson moved to leave the area, an unidentified police officer grabbed him forcefully by the shoulders and pushed him to the ground and then, another Police Officer, whose name it is believed is Police Officer Connolly, handcuffed him very tightly behind his back which caused great pain to his hands and wrists.

48. Albertson was not informed of the basis of his arrest.

49. An unidentified Police Officer forcefully handcuffed Lang and did not inform her of the basis of her arrest.

50. Police Officer, whose name is believed to be Rose-Hinksman, forcefully handcuffed Epstein and did not inform her as to the basis of her arrest.

51. Police Officer, whose name it is believed to be Rose-Hinksman, inappropriately and without justification searched Epstein's body in a violating manner which included placing her hands underneath Plaintiff Epstein's skirt and on her bare skin.

52. The handcuffs placed on Albertson, Epstein and Lang were tightly secured and caused Plaintiffs hands to lose feelings and/or become swollen and/or become red.

53. Albertson, Epstein and Lang were taken by bus to Pier 57, a facility located on Manhattan's West Side by unidentified police officers and officials and Police Officers who it is believed are named Connolly and Rose-Hinksman.

54. When the bus arrived and stopped at Pier 57, Albertson, Epstein and Lang were held handcuffed on the bus for an inordinate period of time, upon information and belief, said time was in excess of three hours.

55. While on the stopped bus, Plaintiffs Albertson, Epstein and Lang were denied access to a bathroom despite repeated requests to unidentified police officers and despite Lang's request to a Police Officer, whose name is believed to be Connolly and Epstein's request to Police Officer, whose name is believed to be Rose-Hinksman.

56. Upon arrival at Pier 57, unidentified police officers improperly searched Albertson and Lang and a Police Officer, whose name is believed to be Rose Hinksman, improperly searched Epstein.

57. Albertson, Epstein and Lang had their property confiscated and were placed in holding cells by unidentified police officers.

58. Albertson, Epstein and Lang were held handcuffed while at Pier 57.

59. Albertson specifically requested from an unidentified police officer that his handcuffs be removed due to pain and discomfort, but such request was denied.

60. The conditions at Pier 57 were filthy, hazardous and dangerous and upon information and belief included but were not limited to:

   A) signs warning persons to wear safety equipment signifying the presence of dangerous conditions;

   B) the presence of asbestos, oil, grease, dirt, chemicals, black soot, highly toxic chemicals, toxic and hazardous materials and other items on the floors;

   C) lack of adequate fire protection systems;

   D) poor air quality;

   E) a lack of benches and/or other places to sit, rest and/or sleep;

   F) a presence of cold air; and

   G) other harmful conditions.

61. As a result of the conditions at Pier 57, Epstein and Lang developed itchy red rashes on their body.

62. During their time at Pier 57, Albertson, Epstein and Lang were denied adequate food and water.

63. While at Pier 57 Albertson and Epstein requested legal assistance but their requests were ignored.

64. During their time at Pier 57, Albertson, Epstein and Lang were denied medical assistance and were denied the opportunity to make a telephone call despite their requests.

65. The toilet facility at Pier 57 was a porta-pot type of toilet outside of the cell making it difficult if not impossible and otherwise unreasonable to utilize.

66. The conditions placed Plaintiffs at risk to their health, welfare, and well being Defendants knew or should have known that those conditions placed Albertson, Epstein and Lang at increased jeopardy to their health and well being.

67. After a prolonged and unreasonable detention, Albertson, Epstein and Lang were transported to Central Booking at 100 Centre Street where there personal items were improperly searched by unidentified police officers.

68. Albertson, Epstein and Lang were packed into holding cells making it difficult to breathe and to otherwise obtain any humane comfort.

69. While at 100 Centre Street, Albertson, Epstein and Lang were denied adequate food despite their repeated requests to unidentified police officers.

70. While at 100 Centre Street, Albertson, Epstein and Lang had their fingerprints and photos taken and Albertson also had his palms and sides of his hands imprinted by unidentified police officers.

71. While at 100 Centre Street, medical personnel were unresponsive Albertson, Epstein and Lang's medical complaints.

72. On September, 2, 2004 Albertson was seen by medical personnel because he had lost feeling in his hands, but medical personnel did not address the matter related to his hands.

73. Albertson requested legal assistance while at 100 Centre Street, but his request was denied until just before his arraignment on September 2, 2004.

74. Plaintiff Albertson appeared before the Judge on September 2, 2004.

75. While at 100 Centre Street, Epstein requested legal assistance, but her request was denied until just before her arraignment on September 2, 2004.

76. Epstein took an Adjournment in Contemplation of Dismissal.

77. Upon information and belief, Epstein's possessions were not returned to her in the same condition as they were taken.

78. On September 2, 2004 Plaintiff Lang took a Desk Appearance Ticket.

79. Plaintiff Lang requested but was never provided with access to counsel.

80. The length of Albertson, Epstein and Lang's detention and confinement was unreasonable and excessive and in violation of the law.

81. Ultimately the conditions of Albertson, Epstein and Langs' detention and confinement were unreasonable, unnecessary and excessive terms and conditions of their seizure which placed them at risk.

82. As a direct and proximate result of the Defendants' wrongful polices, practices, customs and/or usages complained of herein, Plaintiffs Albertson, Epstein and Lang have suffered physical, mental and emotional injury and pain, mental anguish, humiliation and embarrassment and financial losses.

83. As a result of the illegal arrest and subsequent detention, Albertson was caused to miss school and his classroom grade was lowered.

**2. Plaintiffs Jenny Esquivel and Jeffrey Miller**

84. On the evening of August 31, 2004, Esquivel and Miller were walking peacefully throughout the borough of Manhattan, occasionally stopping to observe peaceful demonstrations in which the participants were exercising their First Amendment protected right to free speech. They had no plans to engage in any specific actions or protests that evening.

85. While walking along the sidewalk near 370 Park Avenue South and while not engaged in any demonstrations, marches or other protest activities, Esquivel and Miller observed numerous unidentified police officers of the New York Police Department (NYPD) running past them, also on the sidewalk.

86. Esquivel and Miller, along with approximately seven (7) others, then moved into a recessed doorway so as to put themselves out of the way of the running unidentified police officers.

87. Minutes after retreating to the recessed doorway, Esquivel and Miller and the other individuals were grabbed by unidentified police officers and were forcefully ordered to leave the area.

88. Esquivel and Miller attempted to comply with the order by walking calmly, peacefully and without retort out of the area.

89. As Esquivel and Miller were exiting the area, a second group of unidentified police officers approached them and told them not to continue moving, that they were stay in their current location.

90. Both groups of unidentified police officers then proceeded to grab, push and pull Esquivel and Miller to force their compliance with the contradictory orders.

91. Miller was pushed by unidentified police officers to the ground where his hands were stepped on and an unidentified police officer put his boot on Miller's face so that his face was between the concrete and the boot.

92. Miller was then handcuffed by an unidentified officer.

93. Esquivel was handcuffed and pushed to her knees and made to sit there with her hands behind her back with her head down by a police officer whose name is believed to be Police Officer Roman.

94. Esquivel and Millers' handcuffs were secured in an extremely tight manner and were not removed until several hours later.

95. The handcuffs caused Esquivel and Millers' hands to experience pain and to turn colors due to loss of blood.

96. Esquivel and Miller were separated and placed onto two separate buses, where they were made to wait in hot and overcrowded conditions while handcuffed, for two to three hours.

97. While on the bus, Miller was placed in a small chamber of the bus with another individual in a space intended for one person where he had difficulty breathing.

98. Esquivel and Miller were taken to Pier 57.

99. Esquivel was assigned to a Police Detective, whose name is believed to be Victor Lebron who improperly searched her and improperly confiscated her property, including her backpack, and had her placed in a wire cage holding cell.

100. Miller was assigned to a Police Officer, whose name is believed to be Tyree Fisher, who improperly searched him and improperly confiscated his property and had him placed in a wire cage holding cell.

101. The conditions at Pier 57 were filthy, hazardous and dangerous and upon information and belief included but were not limited to:

    A) signs warning persons to wear safety equipment;

    B) the presence of asbestos, oil, grease, dirt, chemicals, black soot, highly toxic chemicals, toxic and hazardous materials and other items on the floors;

    C) lack of adequate fire protection systems;

    D) poor air quality;

    E) a lack of benches and/or other places to sit, rest and/or sleep;

    F) a presence of cold air; and

      G) other harmful conditions.

102. During their time at Pier 57, Plaintiffs were denied adequate food and water.

103. During their time at Pier 57, Plaintiffs were denied medical and legal assistance and were denied the opportunity to make a telephone call.

104. The toilet facility was a porta-pot type of toilet outside of the cell making it difficult if not impossible and otherwise unreasonable to utilize.

105. The conditions placed Plaintiffs at risk to their health, welfare, and well being and the Defendants knew or should have known that those conditions placed them at increased jeopardy to their health and well being.

106. The next day Esquivel and Miller were transported to Central Booking at 100 Centre Street.

107. Miller and Esquivel were packed into holding cells at 100 Centre Street making it difficult to breathe and to otherwise obtain any humane comfort.

108. While at 100 Centre Street Esquivel and Miller had their fingerprints and photos taken.

109. While at 100 Centre Street Esquivel and Miller's repeated requests for counsel were denied.

110. Esquivel was not provided with counsel until just minutes before her arraignment on September 3, 2004.

111. The Judge set bail and ordered Esquivel to prison at Riker's Island.

112. Esquivel was released later that day.

113. Miller was not provided with counsel until just minutes before his arraignment on September 2, 2004.

114. Miller was released with an Adjournment in Contemplation of Dismissal.

115. Ultimately the conditions of Esquivel and Millers' detention and confinement were unreasonable, unnecessary and excessive terms which placed them at risk.

116. The length of Esquivel and Miller's detention and confinement was unreasonable and excessive and in violation of the law.

117. As a direct and proximate result of the Defendants' wrongful polices, practices, customs and/or usages complained of herein, Esquivel and Miller have suffered physical, mental and emotional injury and pain, mental anguish, humiliation and embarrassment and financial losses.

## FEDERAL CAUSES OF ACTION

### FIRST CAUSE OF ACTION

118. The Plaintiffs reiterate Paragraphs 1 through 116 and incorporate each and every paragraph by reference herein.

119. The Plaintiffs were falsely and unlawfully arrested and falsely imprisoned in violation of the their rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

120. Defendants, through officers and agents, by their acts and omissions, with intent to confine and imprison said Plaintiffs without privilege to do so and without lawful justification.

121. Plaintiffs were conscious of and did not consent to their respective confinements and imprisonments.

122. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

### SECOND CAUSE OF ACTION

123. The Plaintiffs reiterate Paragraphs 1 through 121 and incorporate each and every paragraph by reference herein.

124. The Plaintiffs were subjected to unnecessary and unreasonable and excessive force, including unnecessary, unreasonable, and excessive handcuffing in violation of their rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

125. Defendants, through officers and agents, intentionally placed Plaintiffs in reasonable fear of imminent harmful or offensive bodily contact.

126. Defendants, through officers and agents, intentionally and wrongfully engaged in physical contact with Plaintiffs without Plaintiffs' consent.

127. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

### THIRD CAUSE OF ACTION

128. The Plaintiffs reiterate Paragraphs 1 through 126 and incorporate each and every paragraph by reference herein.

129. The Plaintiffs were subjected to unreasonable, unnecessary, and excessive detention and conditions of detention, including but not limited to being subject

to medical and health impairing facilities, as a result of their seizure and detention in violation of their rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

130. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

## FOURTH CAUSE OF ACTION

131. The Plaintiffs reiterate Paragraphs 1 through 129 and incorporate each and every paragraph by reference herein.

132. The Plaintiffs were denied adequate medical care while in custody in violation of their rights under 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

133. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

## FIFTH CAUSE OF ACTION

134. The Plaintiffs reiterate Paragraphs 1 through 132 and incorporate such by reference herein.

135. Defendants' actions and conduct described herein were taken with intent and without justification for the collateral purpose of punishing the Plaintiffs for the exercise of their First Amendment protected speech activities in violation of the Plaintiffs' rights under the Fourth and Fourteenth Amendments to the United States Constitution and brought pursuant to 42 U.S.C. § 1983.

136. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

## SIXTH CAUSE OF ACTION

137. The Plaintiffs reiterate Paragraphs 1 through 135 and incorporate each and every paragraph by reference herein

138. Plaintiffs actions as described herein were constitutionally protected under the First Amendment.

139. The illegal conduct described herein taken against Plaintiffs by Defendants constitutes adverse actions and has the effect of, <u>inter alia</u>, deterring Plaintiffs from exercising their rights under the First Amendment.

140. Such conduct by Defendants was done in retaliation for Plaintiffs having exercised their rights to free speech and assembly.

141. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

### SEVENTH CAUSE OF ACTION

142. The Plaintiffs reiterate Paragraphs 1 through 140 and incorporate each and every paragraph by reference herein.

143. Plaintiffs actions as described herein were constitutionally protected under the First Amendment.

144. The illegal conduct described herein taken against Plaintiffs by Defendants was done in violation of 42 U.S.C. § 1983 and the First and Fourteenth Amendments to the United States Constitution.

145. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

### EIGHTH CAUSE OF ACTION

146. The Plaintiffs reiterate Paragraphs 1 through 144 and incorporate each and every paragraph by reference herein.

147. The Defendant City's policies and practices, including, inter alia, engaging in mass arrests which were unlawful and without probable cause, instituting a system of preventive detention to keep lawful protesters off the streets, the handcuffing policies and practices, the cruel and inhumane conditions of detention and the administration policies and practices, all of which propelled the actions and conduct herein, violated the Plaintiffs' rights as guaranteed under the First, Fourth and Fourteenth Amendments to the United States Constitution.

148. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

## STATE CAUSES OF ACTION

### NINTH CAUSE OF ACTION

149. The Plaintiffs reiterate Paragraphs 1 through 147 and incorporate each and every paragraph by reference herein.

150. The Plaintiffs were falsely and unlawfully arrested and falsely imprisoned in violation of the laws and Constitution of the State of New York.

151. Defendants, through officers and agents, by their acts and omissions, with intent to confine and imprison said Plaintiffs without privilege to do so and without lawful justification.

152. Plaintiffs were conscious of and did not consent to their respective confinements and imprisonments.

153. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

### TENTH CAUSE OF ACTION

154. The Plaintiffs reiterate Paragraphs 1 through 152 and incorporate each and every paragraph by reference herein.

155. The Plaintiffs were subjected to assault and battery in the form of unnecessary and excessive and unreasonable handcuffing in violation of their rights under the laws and Constitution of the State of New York.

156. Defendants, through officers and agents, intentionally placed Plaintiffs in reasonable fear of imminent harmful or offensive bodily contact.

157. Defendants, through officers and agents, intentionally and wrongfully engaged in physical contact with Plaintiffs without Plaintiffs' consent.

158. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

### ELEVENTH CAUSE OF ACTION

159. The Plaintiffs reiterate Paragraphs 1 through 157 and incorporate each and every paragraph by reference herein.

160. The Plaintiffs were subjected to unreasonable, unnecessary, and excessive detention and conditions of detention, including being subject to medical and health impairing facilities, as a result of their seizure and detention in violation of their rights under the laws and Constitution of the State of New York.

161. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

### ELEVENTH CAUSE OF ACTION

162. The Plaintiffs reiterate Paragraphs 1 through 160 and incorporate each and every paragraph by reference herein.

163. The Plaintiffs were denied adequate medical care while in custody in violation of their rights under the laws and Constitution of the State of New York.

164. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

## TWELFTH CAUSE OF ACTION

165. The Plaintiffs reiterate Paragraphs 1 through 163 and incorporate each and every paragraph by reference herein.

166. Defendants' actions and conduct described herein were taken with intent and without justification for the collateral purpose of punishing the Plaintiffs for the exercise of their protected speech activities in violation of the Plaintiffs' rights in violation of the laws and Constitution of the State of New York.

167. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

## THIRTEENTH CAUSE OF ACTION

168. The Plaintiffs reiterate Paragraphs 1 through 166 and incorporate each and every paragraph by reference herein

169. Plaintiffs actions as described herein was constitutionally protected under the New York State Constitution.

170. The illegal conduct described herein taken against Plaintiffs by Defendants constitutes adverse actions and has the effect of, <u>inter alia</u>, deterring Plaintiffs from exercising their rights to free speech under the New York State Constitution.

171. Such conduct by Defendants was done in retaliation for Plaintiffs having exercised their rights to free speech.

172. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

## FOURTEENTH CAUSE OF ACTION

173. The Plaintiffs reiterate Paragraphs 1 through 171 and incorporate each and every paragraph by reference herein.

174. Plaintiffs actions as described herein were constitutionally protected under Article I, § 8 of the New York State Constitution.

175. The illegal conduct described herein taken against Plaintiffs by Defendants was done in violation the New York State Constitution.

176. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

FIFTEENTH CAUSE OF ACTION

177. The Plaintiffs reiterate Paragraphs 1 through 175 and incorporate each and every paragraph by reference herein.

178. Defendants intentionally caused Plaintiffs to be exposed to irritants, hazardous and/or toxic chemicals in violation of New York State laws.

179. Defendants knew or should have known that such items were present and would cause harm.

180. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

SIXTEENTH CAUSE OF ACTION

181. The Plaintiffs reiterate Paragraphs 1 through 179 and incorporate each and every paragraph by reference herein.

182. Plaintiffs were denied access to counsel under the laws and Constitution of New York State.

183. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

SEVENTEENTH CAUSE OF ACTION

184. The Plaintiffs reiterate Paragraphs 1 through 182 and incorporate each and every paragraph by reference herein.

185. Independent of the Monell-based claims against Defendant City, Defendant City is responsible, under State law and based upon State law jurisdiction and pursuant to State law and under the doctrine of respondeat superior, for the wrongful and unlawful acts and conduct of its agents and employees.

186. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

**FEDERAL AND STATE CAUSE OF ACTION**

EIGHTEENTH CAUSE OF ACTION

187. The Plaintiffs reiterate Paragraphs 1 through 185 and incorporate each and every paragraph by reference herein.

188. The actions and conduct of the Command Officers knowingly and/or recklessly and with deliberate indifference to the rights of the Plaintiffs sanctioned and ratified the wrongful, unlawful, and unconstitutional conduct and actions of the

subordinate officers in violation of the Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the United States Constitution and under the laws and Constitution of the State of New York.

188. As a direct and proximate result of the misconduct described above, the Plaintiffs suffered injuries and damages.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction herein and thereafter:

(A) Award appropriate compensatory and punitive damages in an amount to be defined and determined.
(B) Award reasonable costs and attorney's fees.
(C) Award such other and further relief as the Court deems appropriate and just.

DATED: New York, New York
August 31, 2005

Respectfully submitted,

ALTERMAN & BOOP, LLP

_____
DANIEL L. ALTERMAN [DLA0454]
35 Worth Street
New York, NY 10013
(212) 226-2800

ATTORNEY FOR PLAINTIFFS